UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/15/18

In re:

ARMONK SNACK MART, INC. f/d/b/a
FRIENDLY SERVICE ARMONK, INC. f/d/b/a
FRIENDLY SERVICE NEW ROCHELLE, INC.,

        Debtor.

OPINION & ORDER

ARMONK SNACK MART, INC. f/d/b/a
FRIENDLY SERVICE ARMONK, INC. f/d/b/a
FRIENDLY SERVICE NEW ROCHELLE, INC.,

        Appellant,

   -against-

ROBERT PORPORA REALTY CORP.,

        Appellee.

16-cv-5887 (NSR)
Chapter 11 No.: 15-22375(RDD)

ARMONK SNACK MART, INC. f/d/b/a
FRIENDLY SERVICE ARMONK, INC. f/d/b/a
FRIENDLY SERVICE NEW ROCHELLE, INC.,

        Appellant,

   -against-

ROBERT PORPORA REALTY CORP.,

        Appellee.

16-cv-6065 (NSR)
Adv. Pro. 15-8225(RDD)

ARMONK SNACK MART, INC. f/d/b/a
FRIENDLY SERVICE ARMONK, INC. f/d/b/a
FRIENDLY SERVICE NEW ROCHELLE, INC.,

        Appellant,

   -against-

GAS LAND PETROLEUM, INC., an assignee of
BPD BANK, A New York Chartered Bank,

        Appellee.

16-cv-6640 (NSR)
Adv. Pro. 15-8325(RDD)

| | |
|---|---|
| ARMONK SNACK MART, INC. f/d/b/a<br>FRIENDLY SERVICE ARMONK, INC. f/d/b/a<br>FRIENDLY SERVICE NEW ROCHELLE, INC.,<br><br>                     Appellant,<br><br>    -against-<br><br>GAS LAND PETROLEUM, INC., MAJED<br>NESHEIWAT, MOUSA MART, INC., and<br>MOUSA NESHEIWAT,<br><br>                     Appellees. | 17-cv-6400 (NSR)<br>Adv. Pro. 15-8226(RDD) |
| ARMONK SNACK MART, INC. f/d/b/a<br>FRIENDLY SERVICE ARMONK, INC. f/d/b/a<br>FRIENDLY SERVICE NEW ROCHELLE, INC.,<br><br>                     Appellant,<br><br>    -against-<br><br>ROBERT PORPORA, ROBERT PORPORA<br>REALTY CORP., and ROBERT PORPORA<br>REALTY, INC.,<br><br>                     Appellee. | 17-cv-6403 (NSR)<br>Adv. Pro. 15-8226(RDD) |

NELSON S. ROMÁN, United States District Judge:

These appeals arise out of the Chapter 11 Bankruptcy matter of Armonk Snack Mart, Inc. f/d/b/a Friendly Service Armonk, Inc. f/d/b/a Friendly Service New Rochelle, Inc. ("Debtor," "Armonk" or "Appellant"). The principle case arose out of Armonk's voluntary Chapter 11 petition filed in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") and concerns commercial property located at 360 Main Street, Armonk, New York (the "Premises") on which Robert Porpora Realty Corp. ("Porpora Realty") is the landlord. The other appeals involve appellees Robert Porpora, Robert Porpora Realty, Inc. ("Realty Inc."), Gas Land Petroleum, Inc. ("Gas Land"), Majed Nesheiwat, Mousa Mart, Inc., and Mousa Nesheiwat. All of the appeals relate to the following three agreements concerning the

subject Premises: (1) a lease agreement dated January 24, 2002 and entered into between Friendly Service New Rochelle, Inc. ("Friendly") and Porpora Realty (the "Lease"); (2) a letter agreement dated July 1, 2009 between Porpora Realty and Friendly (the "Letter Agreement"); and (3) a purchase agreement between Porpora Realty and Gas Land dated February 3, 2012 (the "Gas Land Agreement"). In sum, Armonk maintains it was the rightful tenant under the Lease and entitled to exercise the purchase option thereunder, it was entitled to give effect to the Letter Agreement, and that by entering into the Gas Land Agreement, Porpora Realty, Gas Land, and others conspired to tortuously interfere with Armonk's rights under the Lease and Letter Agreement.

Currently pending before this Court are five (5) Appeals. The success of each appeal turns on the question of whether Bankruptcy Court Judge Robert D. Drain properly applied collateral estoppel to a state court determination that Armonk was not a successor in interest to Friendly. Upon applying this doctrine, Judge Drain found that Armonk was not a tenant pursuant to the Lease and thus denied its motion to assume in the principle Bankruptcy case (15-22375(RDD)). The remaining appeals stem from various motions to remand to state court and for summary judgment (filed in the attendant adversary proceedings) that were granted in light of the finding on the motion to assume. For the reasons that follow, Judge Drain's orders dated June 15, 2016[1], June 10, 2016, and January 13, 2017[2] are hereby AFFIRMED and the appeals are DISMISSED.[3]

---

[1] There are two orders dated June 15, 2016; one in each of the following bankruptcy cases: 15-22375 and 15-8225.
[2] There are two orders dated January 13, 2017, corresponding to each of the following bankruptcy cases, 15-8226A and 15-8226.
[3] Armonk also moved by Order to Show Cause for a stay which would restore the automatic bankruptcy stay pursuant to 11 U.S.C. § 362(a), pending the outcome of this appeal. (*See* ECF Nos. 12, 25-27, 29.) This Court was subsequently advised that a decision on the Order to Show Cause requesting a stay of the proceedings was no longer imminent, and the Court thus reserved its ruling on the matter. In light of the fact that the appeal is now being decided, the Order to Show Cause for a stay is moot.

I.      **State Court Proceedings**

The Bankruptcy matters relate to various cases filed in New York Supreme Court, Westchester County ("State Court") and the North Castle Justice Court ("Justice Court"). The cases removed from Justice Court were holdover proceedings initiated by Porpora Realty to evict Friendly, while many of the State Court actions were initiated by Armonk in an attempt to exercise contractual rights contained in the Lease and/or the Lease Agreement, and contained claims for tortious interference with a contract. The Lease was entered into on January 24, 2002 between Porpora Realty and Friendly for a term of 10 years to terminate on January 31, 2012, unless the tenant gave timely notice of its intent to renew or exercise an option to purchase imbedded in the Lease. (*See* Appellant's 16-cv-5887 Appendix related to the Porpora Realty Litigation ("Porpora Appendix" or "PA"), No. 8, Exs. E, at 2, 12-13.)

The spat of litigation began in April of 2008, when Porpora Realty initiated an eviction proceeding against Friendly and in response, Friendly commenced a lawsuit to exercise its right to purchase the Premises. (*See* Armonk Brief in Support of its 16-cv-5887 Appeal ("Armonk Br. 1") (16-cv-5887 ECF No. 7), at 5; Porpora Realty Corp. Br. in Response to Armonk's 16-cv-5887 Appeal ("Porp. Br.") (16-cv-5887 ECF No. 9), at 4.) In an attempt to resolve the litigation, Porpora Realty and Friendly entered into the Letter Agreement, which permitted Friendly to exercise the Lease's purchase option for $1,625,000.00. (*See* Porp. Br., at 4; PA No. 8, Ex. I.)

Some time between December of 2011 and January of 2012, BPD Bank initiated a foreclosure action against Porpora Realty and Friendly (the "Foreclosure Action"), alleging that the mortgage was in default and that BPD Bank was entitled to foreclose on the property. (*See* Armonk's Brief in Support of its 17-cv-6400 Appeal ("Armonk Br. 2"), at 8; *see also* Gas Land 17-cv-6400 Brief for Appellees ("GL Br.") (17-cv-6400 ECF No. 11), at 5.)

In the interim, though Friendly and Robert Porpora entered into the Letter Agreement, the purchase option was never exercised, and in February of 2012, Porpora Realty commenced a second eviction proceeding in the Justice Court against Friendly. (*See* PA No. 3, Ex. J.) Somewhat contemporaneously with the initiation of that lawsuit, on February 3, 2012,[4] Porpora Realty entered into the Gas Land Agreement, whereby Porpora Realty agreed to sell the Premises to Gas Land. (*See* Appellant's 17-cv-6400 Appendix[5] related to the Gas Land Tortious Interference Action ("Gas Land Appendix" or "GA"), Ex. E.) In a subsequent foreclosure agreement, Gas Land agreed to assume the BPD Bank mortgage and Porpora Realty consented to "a judgment of foreclosure and sale." (*See* GA, Ex. F, at 2.)

Thereafter, on February 27, 2012, Armonk commenced an action in State Court against Porpora Realty, Gas Land, Nesheiwat, and BPD Bank, for specific performance of the Letter Agreement or to exercise the purchase option under the Lease, and for tortious interference with a contract ("Initial Action"). (*See* PA No. 8, Ex. J.) On a summary judgment motion, Justice Connolly held that the Letter Agreement was a valid, enforceable contract against Robert Porpora, but explicitly found that there were issues of fact as to whether Armonk was entitled to specific performance. (*See* PA No. 8, Ex. M, at 8.) Following Justice Connolly's decision, the parties went to trial on the issues of specific performance and tortious interference before Justice Bellantoni, which concluded on January 16, 2014. (PA No. 9, Ex. 2.)

At trial, among others to testify were Mr. Sammy Eljimal, principal of Armonk, and Peter Kennedy ("Kennedy"), Armonk's accountant. During his testimony, Mr. Kennedy noted that he

---

[4] There is some contention between the parties as to whether or not the Lease had actually expired at this time. (*Compare* Armonk Br. 2, at 6-7; GL Br., at 5.) Whether the Lease did in fact expire by the time Gas Land and Porpora Realty entered into this purchase agreement is of no moment to the merits of this appeal.

[5] Gas Land and Armonk do not submit a joint Appendix containing the documents relevant to the 17-cv-6400 appeal. Instead, they electronically filed attachments to their respective briefs. (*See* ECF Nos. 8, 10, 11.) All of the documents relevant to this decision have been attached to Armonk's brief, and thus all references in this decision will be to the documents attached thereto, and referred to as the Gas Land Appendix.

was unaware of any legal connection between Armonk and Friendly Service, and that, as accountant for Armonk he prepared separate tax forms for each of the companies, as they were two separate entities.  (*See* PA No. 8, Ex. O.)  Moreover, Mr. Eljimal testified that he had previously sold Friendly Service (referred to therein as "New Rochelle").  (*See* PA No. 8, Ex. P.)

At the close of the evidence, Gas Land and Porpora Realty moved to dismiss.  First, Gas Land moved to dismiss the claims for tortious interference, which Armonk voluntarily withdrew.  (GA Ex. I, at 235-36.)  The defendants moved on two additional grounds: (1) that Armonk had no standing to demand specific performance of the Letter Agreement; and (2) that Armonk was otherwise not ready, willing, or able to make the purchase.  (*See* GA, Ex. I, at 236-38.)[6]

All parties were given an opportunity to argue the merits of the motion on the record.  (*Id.*; PA No. 9, Ex. 2.)  During that time, Armonk explicitly argued the standing issue.  (GA, Ex. I, at 246.)  In response, Justice Bellantoni questioned, "I'm not allowed to consider standing if it's not raised?" and proceeded to allow significant argument by Armonk's counsel on the issue.  (*Id.* at 252.)  Moreover, Armonk raised statements made in Justice Connolly's January 7, 2014 decision in an effort to argue that Justice Connolly had already implicitly found that standing was not an issue.  (*Id.* at 250-51.)  After oral argument, Justice Bellantoni granted the defendants' motions to dismiss on the record, (PA No. 9, Ex. 2, at 261-62), and thereafter issued an amended judgment (the "Amended Judgment") articulating the reasons for this outcome, (*see* PA No. 8, Ex. A.)

Armonk appealed Justice Bellantoni's decision to the State Appellate Division, Second Department ("Appellate Division") who issued a decision on April 27, 2016 affirming the Amended Judgment (the "App. Div. Decision").  (*See* PA No. 8, Ex. B ("App. Div. Dec.").)  The

---

[6] Armonk has provided the pages from this transcript in piecemeal.  The pages provided in the Porpora Appendix completely omit Armonk and Robert Porpora's arguments on the record.  (*See* PA No. 9, Ex. 2.)  On the other hand, the copy of the transcript provided in the Gas Land Appendix does not include Justice Bellantoni's decision on the record, which follows page 260 in the transcript.  (*See* GA, Ex. I.)  All references to the arguments made by both parties will be to the transcript in the Gas Land Appendix, while Justice Bellantoni's decision will be referred to in the Porpora Appendix.

parties briefed the arguments and had oral argument thereafter.  In affirming Justice Bellantoni, the Appellate Division unequivocally found that: (1) Armonk "failed to show that it was the successor in interest to the party that entered into the option agreement"; (2) even if Armonk proved it was Friendly, it "failed to show that it was financially able to purchase the real property in question within a reasonable time after entering into the agreement up until the date of trial"; and (3) that Armonk's contention that Justice Bellantoni erred by considering the standing argument in the first place was "without merit", particularly because the standing testimony was elicited from Armonk's own witness, and Armonk did not object at the time.  (*Id.* at 2.)

In the interim between Justice Bellantoni's Amended Judgment and the Appellate Divison's affirmance, Friendly commenced an unsuccessful lawsuit in State Court to enforce its right of first refusal under the Lease, in light of the Gas Land Agreement (the "Refusal Action"). (*See* PA No. 8, Ex. R.)  The matter was dismissed on the grounds of *res judicata*, on January 16, 2015.  (*Id.*, Ex. S.)  Subsequently, on January 23, 2015, Porpora Realty issued a 30 Day Termination Notice to Friendly.  (*See* PA No. 8, Ex. G.)  Following that notice, Porpora Realty initiated its final eviction proceeding in the Justice Court in March of 2015 (the "Holdover Proceeding").  (*See* PA No. 4, Ex. D; *see also* Armonk Br. 1, at 12-13; Porp. Br., 7.)  In apparent response to this proceeding, on March 17, 2015, Armonk also filed its final State Court action against, Gas Land, Porpora Realty, Majed Nesheiwat, Mousa Nesheiwat, Mousa Mart, Inc., and BPD Bank for conspiracy to tortiously interfere with a contract (the "Tortious Interference Action").  (*See* PA No. 8, Ex. Z.)

## II.      Bankruptcy Court Proceedings

Armonk filed a Chapter 11 voluntary petition in the United States Bankruptcy Court for the Southern District of New York on March 24, 2015 (the "Purchase Option Action").  (*See* PA No. 1.)  Along with that petition, the Holdover Proceeding was automatically stayed pending the

outcome of the Chapter 11 case.  On April 7, 2015, Porpora Realty moved to lift the automatic stay.  (*See* PA Nos. 2-3.)  In June of 2015, Armonk moved to assume the Lease and substantial litigation followed.  (*See* PA No. 5.)  Judge Drain heard oral argument on both motions on three separate occasions; August 20, 2015, October 5, 2015, and June 9, 2016.  (*See* PA No. 9, Ex. 4-5; PA No. 14.)  He resolved both motions by order dated June 15, 2016, granting Porpora Realty's motion and denying Armonk's.  (*See* PA No. 11.)  Primarily, Judge Drain found that collateral estoppel precluded Armonk from moving to assume the Lease, in light of Justice Bellantoni's finding that Armonk was not a successor in interest to Friendly, and the Appellate Division's affirmance thereof.  (*See* Jun. 15 Order.)  Armonk's 16-cv-5887 Appeal seeks review of this order.

On April 8, 2015, Porpora Realty removed the Holdover Proceeding to Bankruptcy Court and was assigned Adversary Proceeding Number 15-8225(RDD).  Contemporaneous with his outcome in the Purchase Option Action, Judge Drain issued an order remanding the Holdover Proceeding to State Court, and the 16-cv-6065 Appeal followed.  (*See* 16-cv-6065 ECF No. 1.)

The Foreclosure Action was also removed to Bankruptcy Court and given Adversary Proceeding Number 15-8325.  In light of his decision in the Purchase Option Action, Judge Drain issued an order dated June 10, 2016 remanding the Foreclosure Action back to State Court.  The 16-cv-6640 Appeal followed.  (*See* 16-cv-6640 ECF No. 1.)

Armonk's Tortious Interference Action was also removed to Bankruptcy Court on April 8, 2015 and given Adversary Proceeding number 15-8226(RDD).  Gas Land moved for summary judgment and Porpora Realty moved for partial summary judgment; oral argument was heard on January 6, 2017.  (*See* GA, Ex. P.)  During that hearing, Judge Drain granted both motions for summary judgment based entirely on his ruling in the Purchase Option Action.  (*Id.* at 4-5.)  He memorialized his decision as to Gas Land's motion in an order dated January 13, 2017 (the "Gas Land Order").  (*See* GA, Ex. Q.)  The 17-cv-6400 Appeal followed.  (*See* 17-cv-6400 ECF No. 1.)

He memorialized his decision as to Porpora Realty's motion in a separate order dated January 13, 2017 (the "Porpora Order"). (*See* 17-cv-6403 ECF No. 1.) The 17-cv-6403 Appeal followed.

## STANDARD OF REVIEW

A federal district court has jurisdiction to hear appeals of bankruptcy court orders and decisions. Fed. R. Bank. P. 8013. "Questions of law and mixed questions of law and fact are subject to *de novo* review." *In re Soundview Elite Ltd.*, Nos. 14-CV-7045(JPO), 14-CV-7666(JPO), 2014 WL 7009070, at *1 (S.D.N.Y. Dec. 12, 2014). Questions of fact, on the other hand are reviewed for clear error and should only be set aside when, "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *Id.* (quoting *In re Reilly*, 245 B.R. 768) (B.A.P. 2d Cir. 2000)). This standard applies to all findings of fact, "whether based on oral or documentary evidence." *In re Plumeri*, 434 B.R. 315, 327 (S.D.N.Y. 2010).

## DISCUSSION

### I.    Collateral Estoppel

It is well settled that collateral estoppel and other preclusion principles "apply in bankruptcy proceedings." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). Collateral estoppel, or issue preclusion, is a doctrine which prohibits the litigation of any issue that was previously litigated and decided. *See Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 94 (2d Cir. 2005); *Prime Mgmt., Inc. v. Steinegger*, 904 F.2d 811, 916 (2d Cir. 1990). Where a federal court is reviewing the preclusive effect of a state court's decision, state law applies. *Marrese v. Am. Acad. Of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). In New York, collateral estoppel is triggered where: "(1) the identical issue necessarily was decided in the prior action and is decisive in the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007)

(citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455-56 (1985)); *Evans*, 469 F.3d at 281; *see also In re Barowski*, 257 B.R. 394, 405 (S.D.N.Y. 2004) (citing *Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 200 (2d Cir. 1996)); *see also Evans*, 469 F.3d at 281. As it regards bankruptcies,

"For a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *Evans*, 469 F.3d at 282. Nevertheless, there need not be perfect identity of issues. *See Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 360 (S.D.N.Y. 2014) (citing *Montana v. United States*, 440 U.S. 147 (1979)). A court "must determine first, whether the issues presented by this litigation are in substance the same as those resolved in the prior litigation . . . ." *Id.* (quoting *Montana*, 440 U.S. at 155) (internal quotations and alterations omitted). It bears noting that "the preclusive effects of a final judgment are not altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *In re Indu Craft Inc.*, Nos. 11-CV-5996(JMF), 11-CV-6303(JMF), 11-CV-6304(JMF), 2012 WL 3070387, at *10 (S.D.N.Y. Jul. 27, 2012) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)) (internal quotations omitted).

"A full and fair opportunity to litigate includes the right to appeal 'if the loser wants it.'" *Algonquin Power Income Fund v. Christine Falls of N.Y., Inc.*, 362 F. App'x 151, 154 (2d Cir. 2010) (summary order). The standard of "actually and fully litigated" applies where it is "clear that the litigant was afforded his day in court . . . although [the issue was] not technically necessary to the prior court's judgment." *Murphy v. Gallagher*, 761 F.2d 878, 882 (2d Cir. 1985).

Critically, while collateral estoppel is an equitable doctrine, "Congress specifically required all federal courts give preclusive effect to state court judgments whenever the courts of the state from which the judgments emerged would do so." *Kelleran v. Andrijevic*, 825 F.2d 692,

694 (2d Cir. 1987). This applies to bankruptcy courts as well, thereby precluding modification of a state court judgment that would be granted preclusive effect in state court, unless "the judgment was procured by collusion or fraud . . . or where the rendering court lacked jurisdiction." *Id.*

## DISCUSSION

### I.     The Elements of Collateral Estoppel are Met

The central issue to all of the Appeals is whether Judge Drain properly applied the doctrine of collateral estoppel to Justice Bellantoni's October 3, 2014 Amended Judgment (and the Appellate Division's affirmance). Appellees contend that Judge Drain properly applied collateral estoppel to the finding that Armonk was not the same legal entity as, or the successor in interest to Friendly, leading to the conclusion that Armonk was not the tenant on the Lease and triggering denial of the motion to assume. (*See* Porp. Br., at 12-22; GL Br., 13-24.) Armonk, on the other hand, principally argues that the elements of collateral estoppel have not been met, and that the equities do not favor the application of the doctrine in this case. (*See* Armonk Br. 1, at 14-15; Armonk Br. 2, at 13-14.) This Court agrees with Judge Drain's application of collateral estoppel, warranting affirmance of his Orders and dismissal of all of the appeals.

### A.     Identity of Issues

There is identity of issues between the Bankruptcy Court cases and the Initial Action in State Court. "For a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *Evans*, 469 F.3d at 282. It is clear that the issue of standing was *not* raised in Porpora Realty or Gas Land's pleadings in State Court, but this is not outcome determinative. Standing was nevertheless placed in issue and actually determined by Justice Bellantoni. During the State Court trial, Kennedy's testimony placed it in issue when he testified that as Armonk's accountant, he was not aware of any business or financial interest relationship

that existed between Armonk and Friendly, and that the companies were two separate entities for which he prepared two separate tax returns. (*See* PA No. 8, Ex. O.) Armonk did not object to this testimony. (*Id.*) At the conclusion of the trial, and on the motions of Gas Land and Porpora Realty to dismiss for lack of standing and Armonk's failure to demonstrate readiness, willingness, and ability to purchase the property, Justice Bellantoni granted the motion on the record and issued an Amended Judgment. (*See id.* at 261; PA No. 8, Ex. 1 October 3, 2014 Amended Judgment of Justice Bellantoni ("Am. Judg."); *see also See* PA No. 9, Ex. 2, at 236, 261.) Justice Bellantoni held that "Armonk is *not* the same legal entity as, 'formerly known as' or otherwise entitled to succeed to the rights of[,] Friendly New Rochelle, the purchaser of the Property owned by defendant Robert Porpora Realty Corp." (Am. Judg., at 3.)

Additionally, contrary to Armonk's contentions, (*see* Armonk Br. 1, at 19; Armonk Br. 2, at 19), the issue of standing was necessary to support a valid and final judgment on the merits. The primary issue before Justice Bellantoni at trial was whether Armonk was entitled to exercise the rights under the Letter Agreement. In order to find that Armonk could, and should, purchase the property under the Letter Agreement, Justice Bellantoni first had to determine whether Armonk was the same entity as, or successor in interest to, Friendly, as Armonk was not listed as a party to the Letter Agreement. (*See* PA No. 8, Ex. I.) Whether the issue of standing was raised at the pleadings stage or not is of no moment; it was nevertheless critical to a determination regarding Armonk's rights under the Letter Agreement.[7]

Furthermore, Armonk's description of Justice Bellantoni's holding is not only too narrow a holding, but is plainly incorrect. Armonk argues that Justice Bellantoni "found merely that the Debtor was not a party to the Letter Agreement . . . ." (*See* Armonk Br. 1, at 17; Armonk Br. 2, at

---

[7] On appeal from Justice Bellantoni's decision, Armonk argued that pursuant to New York state law, defendants had waived the standing argument by failing to raise it in the pleadings. (*See* App. Div. Decision, at 2.) The Appellate Division explicitly rejected Armonk's argument because the issue of standing was put in issue at trial by Armonk's own witness. (*Id.*)

19.)  Armonk misses the mark.  Justice Bellantoni focused on the legal relationship between the parties.  Indeed, he unequivocally found that Armonk and Friendly were two separate legal entities.  (*See* Am. Judg., at 3.)  Resulting from that determination, it was clear that Armonk was not a party to the Letter Agreement and thus had no right to purchase the premises.  Whether attempting to enforce the Lease or Letter Agreement, Armonk's standing is key; Friendly, not Armonk, is the entity listed on both.

Moreover, the issue of Armonk's legal relationship to Friendly is essential to the motion to assume that was before Judge Drain.  Where, as here the fact or legal question decided by the state court is critical to the issue in federal court, identity of issues exists.  *Phifer v. City of New York*, 289 F.3d 49, 60 (2d Cir. 2002) (finding first element of collateral estoppel met where state issue presented to district court was already decided against the party in state court).  The motion before Judge Drain was one to assume the lease pursuant to 11 U.S.C. § 365(a).  (*See* PA No. 5.)  Section 365(a) permits a trustee to "assume or reject any executory contract or unexpired lease *of the debtor*."  11 U.S.C. § 365(a).  It is thus patently obvious that the debtor be the tenant under the lease to be assumed.  As discussed, Friendly, not Armonk, was the tenant on the Lease, and therefore the legal relationship between the two entities was paramount to the issue of assumption.  This precise issue was decided by Justice Bellantoni and affirmed by the Appellate Division.  (*See* Am. Judg., at 3; App. Div. Dec., at 2.)  There is identity of issues,[8] and the issue was actually litigated and necessarily decided.

---

[8] Even viewing the issues in Armonk's framework, identity of issues is met.  Armonk's position is that the issue before Justice Bellantoni was one of whether or not Armonk could exercise the option under the Letter Agreement, on which Friendly (not Armonk) was named.  (*See* Armonk Br. 1, at 17.)  The issue before Judge Drain, according to Armonk, was whether Armonk could assume the lease (which named Friendly as the tenant).  (*Id.* at 17.)  It is true, these issues on their face are not identical.  Nevertheless, "the prior decision need not have been explicit on the point, since if by necessary implication it is contained in that which has been explicitly decided, it will be the basis for collateral estoppel."  *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997).  In both instances, the Letter Agreement and the Lease, Friendly, not Armonk is the listed tenant.  Accordingly, to decide either issue, both Courts necessarily had to decide whether Armonk was the same legal entity as, or successor in interest to, Friendly.  That factual determination was made by Justice Bellantoni, affirmed by the Appellate Division and properly accorded preclusive effect.

B. **Full and Fair Opportunity to Litigate**

Armonk had more than a full and fair opportunity to litigate the issue of whether or not it was a successor in interest to Friendly. The second prong of collateral estoppel requires that, to take effect, the party against whom collateral estoppel is being asserted must have had a full and fair opportunity to litigate the issue. *In re Hyman*, 502 F.3d at 65; *Evans*, 469 F.3d at 281; *see also In re Barowski*, 257 B.R. at 405. To make that determination, "New York courts consider 'the various elements which make up the realities of litigation.'" *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 473-74 (S.D.N.Y. 2009). The central concern is to ensure that "a party not be precluded from obtaining at least one full hearing on his or her claim." *Id.* at 474. Armonk has had more.

Armonk's analysis of this prong is unjustifiably narrow. Armonk argues that it was prejudiced and did not have a full and fair opportunity to litigate the issue because it was raised mid-trial. (*See* Armon Br. 1, at 18; Armonk Br. 2, at 20.) This argument is unavailing for two reasons: (1) Armonk's own witness put standing at issue during the trial; and (2) Justice Bellantoni permitted significant argument on the issue of standing post-trial before he made his findings. Contrary to Armonk's dramatic contention, it was not "entirely stripped by the State Court of any ability to argue that it was prejudiced by the argument which was raised for the first time at trial." (*See* Armonk Br. 1, 18.) Armonk had ample opportunity to be heard.

First, Armonk's witness raised the standing issue during his testimony; Armonk failed to object. (*See* PA No. 8, Ex. O.) That was Armonk's first opportunity to argue prejudice; it did not. Second, upon conclusion of the presentation of evidence, Gas Land thoroughly argued that the evidence made clear that Armonk was not the successor in interest to Friendly, and Armonk had an opportunity to respond. (*See* GA Ex. I, at 236-238, 246-250.) At the time, Armonk made the exact arguments it makes now, that Gas Land waived the standing argument by failing to raise it

in its pleadings, (*compare id.* at 246 *with* Armonk Br. 1, at 18), and that Justice Connolly had impliedly found that there was no standing issue, (*compare id.* at 246-50 *with* Armonk Br. 1, at 17.)[9]  It was not until after Gas Land, Porpora Realty, and Armonk were heard on the record that Justice Bellantoni rendered his decision.  (*See* PA No. 9, Ex. 2, at 261-63.)  Armonk had a full and fair opportunity.

Even if Armonk is correct that it was not afforded ample opportunity to be heard at the trial court level, Armonk raised the issue on appeal to the Appellate Division who affirmed Justice Bellantoni's decision.  This is crucial, because Judge Drain waited until the Appellate Division ruled before rendering his decision on the motion to assume.  (*See* PA No. 9, Ex. 3, at 38-40.)  Perfecting an appeal, alone, is sufficient to satisfy this prong of collateral estoppel.  *See Town of Poughkeepsie v. Espie*, No. 02-CV-6995(CLB), 2006 WL 236787, at *3 (S.D.N.Y. Jan. 27, 2006) (noting full and fair opportunity to litigate where issue was pending on appeal); *see also Yu v. Knighted LLC*, No. 15-CV-9340(KMK), 2017 WL 666118, at *7 (S.D.N.Y. Feb. 16, 2017) (applying collateral estoppel where plaintiff's discrimination claims were heard before NYSDHR and then affirmed by the New York State Supreme Court).  Here, there was more.  Armonk had an opportunity to brief the issues both orally and in writing before the Appellate Division.  (*See*

---

[9] Armonk's contention that Justice Bellantoni "ignored the fact that the standing issue had not been raised by either the Landlord or Gasland in their respective answers" is equally unavailing.  At oral argument, Armonk raised the issue of waiver, and Justice Bellantoni explicitly responded.  (*See* GA Ex. I, at 246-247.)  Moreover, as detailed below, the Appellate Division squarely addressed Armonk's contentions that standing was waived, and found that the argument lacked merit.  (*See* App. Div. Dec., at 2.)  To find otherwise would require this Court to implicitly find that Justice Bellantoni and the Appellate Division's substantive outcomes were incorrect; that this Court cannot do.  It is not for this Court to second guess a state court on state law.  *See Stubbs v. de Simone*, No. 04-CV-5755(RJH)(GWG), 2005 WL 2429913, at *18 (S.D.N.Y. Sept. 30, 2005) (citing *Richards v. City of New York*, No. 97-CV-7990(MBM), 2003 WL 21036365, at *8 (S.D.N.Y. May 7, 2003) for proposition that a federal court should apply collateral estoppel where federal claims "could succeed only to the extent that the state court erred) (internal alterations omitted).  Similarly, whether the Appellate Division erred in its application of *Murray v. City of New York*, 43 N.Y.2d 400 (1977), (*see* Armonk Br. 2, at 24-26), is not for this Court to decide; indeed, "the preclusive effects of a final judgment are not altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."  *In re Indu Craft Inc.*, Nos. 11-CV-5996(JMF), 11-CV-6303(JMF), 11-CV-6304(JMF), 2012 WL 3070387, at *10 (S.D.N.Y. Jul. 27, 2012) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)) (internal quotations omitted).  Armonk's arguments in this respect are better suited to be heard before the New York Court of Appeals, not a federal court deciding an issue of collateral estoppel.

Porp. Br., at 11.)  Again, Armonk argued that standing had been waived and that Justice Bellantoni's decision on the issue of standing was not supported by the law; the Appellate Division disagreed.  (*See* App. Div. Dec., at 2.)  At this point, it appears that Armonk is merely looking for third and fourth bites at the apple, having been denied by the State Courts on two prior occassions.

Finally, Armonk argues fairness to contend that applying collateral estoppel would mean that "conspiring litigation-adversaries are able to oust a compliant tenant on a hyper-technicality." (*See* Armonk Br. 2, at 22.)  Such contention has no support in law.  In reality, Armonk had ample opportunity to defend its interest, demonstrate that it was a successor in interest to Friendly, and persuade the State Courts of its position.  The Appellate Division explicitly found that the issue of standing was properly raised during the pendency of the trial, and affirmed Justice Bellantoni's holding that Armonk was not a successor in interest to Friendly.  (*See* App. Div. Dec. at 2.) Viewing the "realities of the litigation", it is apparent that the equities favor applying collateral estoppel; Armonk raised the same arguments at the state trial and appellate levels before re-raising them before the Bankruptcy Court *and* now this Court.  Armonk's mere dissatisfaction with the State Court determinations is insufficient to withhold the application of collateral estoppel. Finding otherwise would cut against finality of judicial decisions, *see Giakoumelos v. Coughlin*, 88 F.3d 56, 61 (2d Cir. 1996) ("Were the district court to review the merits of all of [Plaintiff's] claims it appears that it would have before it essentially the same record . . . that the Appellate Division had before it."), a central policy consideration behind collateral estoppel.

## II.    No Abuse of Discretion in Finding that Debtor was Not Tenant

Judge Drain's finding that Armonk was not the tenant under the lease was one of fact and is thus reviewed for clear error.  This Court will not set aside his finding unless clearly erroneous, *i.e.* where the reviewing court is "left with the definite and firm conviction that a mistake has been made."  *In re Pulmeri*, 434 B.R. at 327 (quoting *ASM Capital, LP v. Ames Dep't Stores, Inc. (In*

*re Ames Dep't Sotres, Inc.)*, 582 F.3d 422, 426 (2d Cir. 2009)). The party seeking to set aside the Bankruptcy Court's findings of fact bears a heavy burden. *Id.* Judge Drain's finding that Armonk was not the tenant, was not clearly erroneous. In fact, Judge Drain was compelled to decide as much, once he found that collateral estoppel was applicable. There was no clear error.

## III.    The Remaining Appeals

Considering that Armonk's legal relationship to Friendly is critical to each of the appeals before this Court, and no party has argued otherwise, this Court finds the dismissal of the remaining appeals, 16-cv-6640, 17-cv-6400, and 17-cv-6403, warranted. Moreover, as the parties acknowledged, the appeal of the Holdover Proceeding (16-cv-6065) is moot, and therefore dismissed.

**CONCLUSION**

In light of the foregoing, the Court finds that Judge Drain properly applied collateral estoppel to preclude Armonk's claims in Bankruptcy Court. The State Court has already decided that Armonk was not the same legal entity as, or successor in interest to, Friendly, a critical issue to all of Armonk's Appeals. Consequently, this Court also finds that Judge Drain properly remanded the Foreclosure Action and Holdover Proceeding to State Court and granted summary judgment to Gas Land and Porpora Realty. Additionally, this Court finds Armonk's motion for a stay moot. The Clerk of the Court is respectfully directed to dismiss the following bankruptcy appeals: 16-cv-5887, 16-cv-6065, 16-cv-6640, 17-cv-6400, and 17-cv-6403 and close the cases.

Dated:    May 15, 2018                                            SO ORDERED:
       White Plains, New York

                                                                 NELSON S. ROMÁN
                                                 United States District Judge